**The AETNA CASUALTY & SURETY COMPANY, Appellant,**

v.

**Jarrell HARRIS, Appellee.**

No. 6952.

Court of Civil Appeals of Texas.

Beaumont.

April 25, 1968.

Rehearing Denied May 15, 1968.

King, Sharfstein & Rienstra, Beaumont, for appellant.

Barber & Seale, Jasper, for appellee.

PARKER, Justice.

This is a workmen's compensation suit brought by Jarrell Harris against The Aetna Casualty & Surety Company as the result of an injury he sustained on or about June 28, 1966, while he was working for E. I. duPont de Nemours & Company, Inc. at its Sabine River plant in Orange County, Texas. Trial was to a jury which found in response to special issues that Harris had sustained an accidental injury in the course of his employment for the assured, the duPont Company, and as a result thereof, sustained total incapacity for 401 weeks. Further, the jury found the injury was confined to Harris' left leg, that Harris sustained total loss of use of his left leg beginning June 28, 1966, and that the duration of such loss of use was 401 weeks. Judgment was entered in favor of Harris for 200 weeks of compensation for total loss of use of the left leg. The parties will be designated as in the trial court.

Harris pled that he "sustained severe accidental injury to his body while in the course of his employment for E. I. duPont de Nemours & Company in Orange County, Texas, on or about June 28, 1966, when he stepped on a rock and fell, causing severe injury to the muscles, tissues, ligaments, sinews, nerves, tendons and bony structure of his left side, back, and body generally, all of which has produced total and permanent incapacity to plaintiff from the date of injury." Further, Harris pled "that in the alternative, your plaintiff further shows unto the Court that if his incapacity is and was not total and permanent for a period of four hundred one (401) weeks from the date of his injury that he is then entitled to recover for whatever disability as the preponderance of the proof may show." Defendant pled general denial, that any disability that plaintiff had was due solely to natural conditions, diseases or other injuries of his body in no wise caused or brought about by any accidental injury sustained by him while working for his employer, and "for further answer, defendant says that if plaintiff is suffering from any disability or incapacity as a result of an accidental injury sustained by him on or about June 28, 1966, while working for E. I. DuPont de Nemours & Company, such disability and incapacity is confined and limited to some partial and temporary loss of the use of plaintiff's left leg." The jury found plaintiff had been injured as alleged with the result that he had sustained total disability that did continue for 401 weeks. In answer to issues limited to plaintiff's leg, the issues and jury's answers are as follows:

### SPECIAL ISSUE NO. 13

Do you find from a preponderance of the evidence that the injury, if any, of Jarrell Harris sustained on or about June 28, 1966, was not confined to his left leg?

Answer "It was confined" or "It was not confined."

Answer: It was confined.

If you have answered the preceding Special Issue "It was confined," and only in that event, then answer:

### SPECIAL ISSUE NO. 14

Do you find from a preponderance of the evidence that Jarrell Harris sustained any loss of use of his left leg as a natural result of his injury, if any, of June 28, 1966?

Answer "Yes" or "No"

Answer: Yes

If you have answered Special Issue No. 14 "Yes," and only in that event, then answer:

### SPECIAL ISSUE NO. 15

Do you find from a preponderance of the evidence that any of such loss of use of the left leg, if any you have found, was total?

Answer "Yes" or "No"

Answer: Yes

If you have answered Special Issue No. 15 "Yes," and only in that event, then answer:

## SPECIAL ISSUE NO. 16

What do you find from a preponderance of the evidence to be the beginning date of such total loss of use of the left leg, if any you have found?

Answer by stating the month, day and the year, if any.

Answer: June 28, 1966

If you have answered Special Issue No. 15 "Yes," and only in that event, then answer:

## SPECIAL ISSUE NO. 17

What do you find from a preponderance of the evidence to be the duration of such total loss of use of the left leg, if any you have found?

Answer by stating "Permanent" or by stating the number of weeks, if any, or answer "None"

Answer: 401 weeks

Defendant contends there are no pleadings to justify the submission of Special Issues Nos. 14, 15, 16 and 17. This contention is overruled as to each of such points of error.

 The plaintiff's general pleadings as to disability and injury are aided by the answer of the defendant, defensively alleging the injury and disability was limited to the left leg. Ray v. Barrington, 197 S.W. 781, 783 and cases cited (Tex.Civ.App.1927, no writ history); McElyea v. Parker, 125 Tex. 225, 81 S.W.2d 649, 653 (Comm.App. 1935, opin. adopted by S.Ct.). The defendant's defensive pleadings and the jury's findings limited the plaintiff's recovery to the injuries to his leg. Having succeeded in confining the injury to the leg, the defendant cannot complain. There is no variance between the pleadings of the parties and the proof in this case. Any argu-ment that defendant was surprised or had no notice that Harris' injury was confined to the leg is without merit.

 Defendant contends that in its points of error 13 through 29 there is no evidence, or, in the alternative, there is insufficient evidence that Harris sustained any loss of use of his left leg as a natural result of an injury of June 28, 1966, that any loss of the use of Harris' left leg was total, as to the beginning date of any total loss of the use of Harris' left leg, or of any duration of any total loss thereof, or that the duration will be 401 weeks. The no-evidence points will be considered in the light of the most favorable evidence supporting the jury's findings. The no-evidence points are overruled.

Harris testified: That he went to work for duPont February 1, 1965. That on or about the 28th of June 1966, while working for duPont, he slipped, fell, and hurt his left leg and knee. He got up with his knee, side, and back hurting. Later, he reported to first aid and the nurse sent him to Dr. Minkus, who took x-rays of his knee.

As stated in defendant's brief, Harris testified that he hurt his left knee; that it became swollen; that his knee steadily aches; and whenever he bends it, it hurts and will give way on him; that his knee had continued to hurt up until the time of trial; that when he walks on it, it "clucks" like a bone is broken in it; that it is a grinding sort of thing; that he cannot now walk on uneven ground; that he cannot now do a lot of walking or heavy lifting as he used to do because of his knee; that it bothers him to stand on it a long time.

Harris also testified that he is married with seven children living with him; that he has a sixth-grade education; that he is not trained in any skills; that most of his work has been as a common laborer; that his left knee was hurting at the time of trial; that his knee has hurt all the time since he was injured; that he could not stand on his feet all day at a filling station

because his leg hurts, his knee bothers him and hurts him, and aches all the time; that he has tried to work, and that he had to work to support his family; that he cannot now hold a job; that Dr. Dickerson's treatment helps him, but he is in pain; and that he could not hold the filling station job because he had to climb.

Also as stated in defendant's brief, Dr. Joe Dickerson testified that upon examination of Harris' left knee he found a swollen and tender knee; that it appeared that there was torn cartilage; that there was a grinding or grating in the knee joint; that such a torn cartilage is accompanied by pain and has a disabling effect to a workman that does nothing but common labor; that with such an injury to the knee, bending or squatting is prohibitive; that in carrying any heavy weight or load or walking in a high place, the knee is apt to double up on Harris, since he has no control as to when it is going to function and when it is not going to function; that Harris' knee is a "trick knee"; that Harris should not be allowed to climb; that he did not think Harris could do the usual tasks of a workman; that Harris is totally and permanently disabled; that the leg itself would cause total disability which would be a permanent situation. Dr. Dickerson also testified that Harris just can't trust his knee; that he can climb with great handicap, but will suffer pain if he does so; that Harris cannot climb very high as his knee would get so tired and sore he just could not do it; that he would not approve Harris to work around dangerous machinery or do any climbing; and that he would not approve him for any industrial work.

Dr. Dickerson also testified that in his opinion the condition of Harris' leg alone was sufficient to totally disable him.

Dr. Howard Williams testified that Harris' left knee grates and grinds; that apparently Harris does have some so-called loose bodies in his knee joint, and x-rays of the knee confirm this; that Harris has "joint mice" or loose bodies in the joint;

that he felt Harris had disability to his left knee; that he is sure the knee hurts because Harris has these joint bodies in there.

From the evidence, it can be reasonably inferred that Harris' injuries are permanent and totally disable him from performing his usual tasks as a workman in such a way as to enable him to procure and retain employment. All of defendant's points of error are overruled.

Judgment of the trial court is affirmed.